PRESENT:  All the Justices

RONALD ANGELONE, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS

v.  Record No. 011069    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        March 1, 2002
NORMAN K. DABNEY

                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                      John Richard Alderman, Judge

        In this appeal, we consider whether the trial court erred

in awarding a writ of habeas corpus to a petitioner based on the

court's conclusion that the Commonwealth knowingly used perjured

testimony to obtain his conviction.

        The petitioner, Norman K. Dabney, and his co-defendant,

Kabonji R. Roane, each were indicted for robbery in violation of

Code § 18.2-58, and use of a firearm in the commission of a

felony in violation of Code § 18.2-53.1.  They were charged with

robbing an employee of a hotel in Hanover County.  Dabney and

Roane were tried separately in cases presented by the same

prosecutor.

        Alton Wells, a hotel employee, testified at both trials as

a witness for the Commonwealth.  At Roane's trial, which

occurred first, Wells was unable to identify either of the male

robbers.  He stated that he did not see their faces because the

"one [behind the counter] had the bandana on and the black hat

on.  The other one was going out the door and I didn't get a

chance to see his face as he was going out the door."

At Dabney's trial, Wells testified that he observed one of the robbers leaving the hotel while the other one was located behind the front desk. Wells identified Dabney as the individual leaving the hotel, stating that he had the opportunity to view the "upper half" of Dabney and that Dabney was not wearing a mask at that time. Wells further testified that Dabney was wearing a baseball cap while the other robber was wearing a bandana and a baseball cap. When asked what he specifically recognized about Dabney, Wells responded, "[h]is eyes, his facial structure." The jury found Dabney guilty of both charges and fixed his punishment at 24 years' imprisonment for robbery and at 3 years' imprisonment for the firearm charge.

Dabney filed a petition for a writ of habeas corpus against Ronald Angelone, Director of the Virginia Department of Corrections (the Director), alleging, among other things, that the Commonwealth knowingly used perjured testimony to obtain his conviction. The trial court conducted a plenary hearing on the petition. Dabney testified regarding the substance of Wells' testimony at Roane's trial and at his own trial. Wells did not testify at the plenary hearing.

In a letter opinion, the trial court found that Wells' testimony had "changed dramatically" between the two trials. The trial court stated, in relevant part:

> In the Roane trial, asked if he saw the robbers, Wells testified that he did, but could not identify either. In contrast, in [Dabney's] trial Wells repeated that he saw the robbers but identified [Dabney].

The trial court concluded that this error was "of significant dimension" and stated that a writ of habeas corpus should issue. In its final order awarding the writ of habeas corpus, the court held that Dabney's "allegation concerning Commonwealth use of perjured testimony as contained in the petition, [is] true as to the testimony of Alton Wells."

The Director filed a motion to reconsider, which the trial court denied. In a letter advising counsel of this decision, the trial court stated that "[o]f greatest concern is that the same prosecutor put the same witness on the stand in successive trials of co-defendants and allowed that witness . . . to testify differently." The Director appealed from the trial court's judgment.

The Director argues that the trial court erred in awarding the writ of habeas corpus. He contends that the record does not establish that Wells gave perjured testimony, or that the prosecutor made knowing use of perjured testimony, based on the mere fact that Wells' testimony varied at the two trials.

In response, Dabney argues that the record supports the trial court's judgment. He asserts that Wells' testimony changed significantly from one trial to the next, and that this

3

variance in his testimony was sufficient to establish perjury under Code § 18.2-435. Thus, Dabney contends that he proved that the prosecution made knowing use of perjured testimony to obtain his conviction because the same prosecutor presented Wells as a witness in successive trials and allowed him to testify differently. We disagree with Dabney's arguments.

When a petitioner asserts that his conviction was obtained by the prosecution's knowing use of perjured testimony, the petitioner bears the burden of proving that the conviction was founded on perjured testimony, and that the prosecution knowingly used that testimony to secure the conviction. See Smyth v. Godwin, 188 Va. 753, 768, 51 S.E.2d 230, 237 (1949); Penn v. Smyth, 188 Va. 367, 374-75, 49 S.E.2d 600, 603 (1948). In arguing that he met his burden of proving that Wells' testimony against him was perjured, Dabney relies on Code § 18.2-435, which provides in relevant part:

> It shall likewise constitute perjury for any person, with the intent to testify falsely, to knowingly give testimony under oath as to any material matter or thing and subsequently to give conflicting testimony under oath as to the same matter or thing. . . . Upon the trial on such indictment, it shall be sufficient to prove that the defendant, knowingly and with the intent to testify falsely, gave such differing testimony and that the differing testimony was given on two separate occasions.

To prove that Wells had committed perjury under this statute, Dabney was required to establish that Wells gave

4

conflicting testimony under oath about a material matter on two separate occasions, and that he did so knowingly and with the intent to testify falsely. See Scott v. Commonwealth, 14 Va. App. 294, 297, 416 S.E.2d 47, 49 (1992). Although Dabney correctly notes that the proof requirements of Code § 18.2-435 are less extensive than those of Code § 18.2-434, which embodies the common law crime of perjury, proof of perjury under either statute requires proof that a witness intended to testify falsely under oath. See Waldrop v. Commonwealth, 255 Va. 210, 215, 495 S.E.2d 822, 825 (1998); Holz v. Commonwealth, 220 Va. 876, 880, 263 S.E.2d 426, 428 (1980); Scott, 14 Va. App. at 297, 416 S.E.2d at 49.

Based on the record before us, we hold that the trial court was plainly wrong in concluding that Dabney met his burden of proving that Wells gave perjured testimony at Dabney's trial. Although Wells' testimony at Dabney's trial partially conflicted with the testimony he gave at Roane's trial, there is no evidence indicating that he gave this partially conflicting testimony with the intent to testify falsely. The record does not show that Wells had any prior negative association with Dabney or had any other motive to testify falsely at his trial. Because Wells did not testify as a witness at the plenary hearing on the habeas corpus petition, the trial court did not

5

evaluate Wells' credibility or question him regarding the reason for the differences in his testimony at the two trials.

In the absence of any such evidence, the trial court effectively determined that the differences in Wells' testimony, without more, supported a conclusion that his testimony at Dabney's trial was given with the intent to testify falsely. Because the present record does not support such a conclusion, Dabney was not entitled to the relief requested in his petition. Absent proof of perjured testimony, a petitioner's claim that a prosecutor made knowing use of perjured testimony is insufficient as a matter of law. See Godwin, 188 Va. at 768, 51 S.E.2d at 237; Penn, 188 Va. at 374-75, 49 S.E.2d at 603. Therefore, we hold that the trial court erred in awarding a writ of habeas corpus.[*]

For these reasons, we will reverse the trial court's judgment and dismiss the petition for a writ of habeas corpus.

Reversed and final judgment.

---

[*] We do not address the Commonwealth's assignment of error that "[t]he trial court erred in holding that the prosecution committed a Brady violation when there was no evidence to support such a holding and the petitioner never raised the claim." The trial court did not make such a holding in its final judgment order, nor did the court modify that order in any respect.

6